THE STATE OF MISSOURI, Respondent, *v.* ANDREW JOECKEL, Appellant.

1. *Crimes and punishments — Offense consisting of different grades — Instructions limiting verdict to one grade.* — It is the established doctrine in this State that upon the trial of a person indicted for an offense consisting of different grades, the court may, by suitable instructions, if the evidence warrants it, direct the jury that the case, as made out by the evidence, belongs to one of the specified grades, and that, if the evidence is believed, they must find their verdict accordingly.

*Appeal from St. Louis Criminal Court.*

*Clover & McElheny,* for appellant.

*C. P. Johnson,* circuit attorney, for respondent.

WAGNER, Judge, delivered the opinion of the court.

The prisoner was indicted in the St. Louis Criminal Court for the crime of murder in the first degree, and at the trial was convicted of murder in the second degree. The only real error complained of is the action of the court in giving and refusing instructions. The evidence shows that the prisoner, in company with several others, on the 30th day of March, 1868, visited several saloons, and were drinking beer, in the town of Manchester; that Harrison, the person killed, did not belong to the company, but met them on one or two occasions on that day. No words of an unfriendly character passed between any of the party and the deceased on that day. Finally, at eight or nine o'clock in the evening, the party were assembled at one of the saloons in that place, and Harrison came in and stood a short time, and left by the back door. He does not seem to have

mingled with them in their carousing, nor to have had any mis-
understanding with them.   Immediately after he left, the prisoner
went out of the other door, proceeded around the yard, where he
found a spade, and hit Harrison the fatal blow, from which he
died in a few hours.   The act seems to have been deliberately
and coolly done.   The companions of the prisoner then took the
dying man and carried him across the street, where he lay exposed
all night, and on the following morning was found dead.

The prisoner had been heard to say, before the perpetration of
the deed, that he would give the deceased what he had given him
before ; and, after the act was committed, he said that he had
" given him *one*," and enjoined secrecy on his associates, lest the
affair should come to the knowledge of his father.   The circuit
attorney, on the trial, declined prosecuting for murder in the first
degree, but proceeded for murder in the second degree.

The court refused all the instructions asked for by the accused,
and, of its own motion, gave, among others, the following : "In
this case, the State, by its representative, the circuit attorney,
declines to prosecute the defendant for murder in the first degree,
as charged in the indictment, but proceeds against him upon the
less grave charge which it embodies of murder in the second
degree.   To this charge alone I will direct your attention, as, in
my opinion, the testimony in this case does not apply to any
other.   The distinction between murder in the first degree and
murder in the second degree lies in the intention with which the
act of killing was done.   Where a homicide has been committed,
and there was an intent to do the act, then, in the absence of any
circumstances of excuse, justification, or extenuation, recognized
by law, it is murder in the first degree.   But if the party killing
did not intend to kill, but assaulted and killed with malice, as
this term is known to the law, then the offense is murder in
the second degree.   Malice, as known to the law, does not mean
mere spite, ill-will, or dislike, as it is ordinarily understood, but,
as applicable to this case, it means the intentional doing of a
wrongful act without just cause or excuse.   With these prelimi-
nary remarks, I will state to you that in order to convict the
defendant of murder in the second degree, under this indictment,

you must be satisfied and believe from the evidence that Milton Harrison was killed by the means and in the manner specified in the indictment; that he came to his death by violence thus inflicted upon him by the defendant; and that such violence was so inflicted upon him by the defendant willfully — that is to say, not by accident—and with malice as above defined. If, therefore, you believe and find from the evidence that the defendant, in St. Louis county, feloniously, willfully, and with malice, killed Milton Harrison in the manner and by the means specified in the indictment, you will find him guilty of murder in the second degree; and so finding, you will assess his punishment at imprisonment in the penitentiary for a term of not less than ten years."

The instructions state the law with clearness and precision, and point out the distinction between murder in the first and second degrees. The statute, after defining murder in the first degree, says: "All other kinds of murder at common law, not herein declared to be manslaughter, or justifiable or excusable homicide, shall be deemed murder in the second degree." (Gen. Stat. 1865, § 2, p. 778.) But it is objected — and that is the chief ground of complaint — that the court erred in confining the consideration of the jury to the offense of murder in the second degree, and that it should have given the defendant's instructions on the law of manslaughter, so as to have allowed them to find him guilty of some of the lesser grades of homicide.

There is no evidence whatever in the case that goes to show that his offense comes within any of the sections defining the crime of manslaughter; and it is the established doctrine in this State that upon the trial of a person indicted for an offense consisting of different grades, the court may, by suitable instructions, if the evidence warrants it, direct the jury that the case, as made out by the evidence, belongs to one of the specified grades, and that, if the evidence is believed, they must find their verdict accordingly. (State v. Shoenwald, 31 Mo. 141; State v. Starr, 38 Mo. 270.) This practice is not an invasion of the province of the jury as to questions of fact; it is simply applying the law to the facts. Where the evidence all tends to prove a certain offense, the administration of justice must not be defeated by

allowing jurors, through sympathy, to convict of a less or different offense. The case at bar was unquestionably murder in the second degree; and if the jury found the facts to be that the prisoner committed the offense as charged in the indictment, the law fixed the grade.

There was no error in the action of the court in refusing the defendant's instructions. Some of them were objectionable, as being inapplicable to the case as shown by the evidence; besides, the instructions given by the court presented the law fairly and correctly, and were sufficient. The jury have found that the prisoner killed Harrison with the means and in the manner set out in the indictment. He was fairly tried and rightly convicted.

Let the judgment be affirmed. The other judges concur.